ELIZABETH GLADFELTER, ALBERT LANG, DIANE BE-REY, JOHN BYTHELL, DENNIS K. HUBBARD, MARY BY-THELL, RICHARD VATCHER, TOMMIE CALDWELL, WM. JEFFREY MILLER, AND WILLIAM GLADFELTER,
Plaintiffs

v.

FAIRLEIGH DICKINSON UNIVERSITY, Defendant

Civil No. 711/1990

Territorial Court of the Virgin Islands

Div. of St. Croix at Kingshill

September 12, 1990

MICHEL F. BAUMEISTER, ESQ. (BAUMEISTER & SAMUELS), New York, N.Y., and JUDITH A. CONTE, ESQ., St. Croix, V.I., *for plaintiffs*

BENNETT CHAN, ESQ. (LAW OFFICE OF ADRIANE DUDLEY), St. Thomas, V.I., *for defendant*

CABRET, *Judge*

## MEMORANDUM OPINION AND ORDER

### INTRODUCTION

In this action for preliminary injunction, the Plaintiffs seek to enjoin the Defendant, Fairleigh Dickinson University (hereafter referred to as "FDU") from closing the Fairleigh Dickinson University West Indies Laboratory, Inc. (hereafter referred to as "WIL"), and from wasting any of its assets. Specifically, Plaintiffs seek an injunction requiring FDU to continue to operate WIL in a safe and secure manner until: (1) FDU complies with its own standards and procedures pertaining to termination of faculty members when a program or department is discontinued; (2) FDU complies with Virgin Islands law regarding plant closings, 24 V.I.C. §§ 471–478 (1989 Supp.); and (3) until an indefinite date between March 1, 1991 and June 30, 1991, when important scientific and oceanographic research grants and projects will be completed. For the reasons which follow, Plaintiffs'

motion for a preliminary injunction shall be granted only with respect to the issue concerning the Virgin Islands Plant Closing Act (hereafter sometimes referred to as the "Act") set forth in 24 V.I.C. Chap. 18, §§ 471–478 (1989 Supp.).

## FACTS

The Plaintiffs are either faculty members of FDU or employees of WIL. Plaintiffs Elizabeth Gladfelter, William Gladfelter, John Bythell, and Dennis Hubbard are employed at the WIL site but they are members of the FDU faculty, and therefore their employment is subject to the policies and procedures contained in the FDU faculty handbook. The other Plaintiffs, Albert Lang, Diane Berey, Mary Bythell, Richard Vatcher, Tommie Caldwell, and Wm. Jeffrey Miller are not members of the FDU faculty but are employed by WIL.

FDU is a non-profit institution of higher education located in New Jersey. WIL is a teaching and research facility owned by FDU. Although WIL is a separate corporate entity, its shares are wholly owned by FDU, and the facility is maintained as a separate department of instruction within FDU. WIL maintains four resident scientists and a support staff of thirteen on eight acres of land located on the northeast shore of St. Croix, U.S. Virgin Islands. WIL serves national and international research and teaching needs, promotes an understanding of the environment, and assists in the management of the natural resources of the Virgin Islands and the Caribbean region.

Since its establishment in 1971, WIL has served as a tropical field laboratory for biologists, ecologists and geologists from around the United States and the world. Besides the significant and essential research conducted by WIL in the Virgin Islands for over 19 years, WIL is also involved in important educational activities on St. Croix, such as teaching school groups, judging science fairs, as well as providing expert advice for natural resource management concerns.

Research at WIL is facilitated mainly through grants obtained from various entities. A scientist submits a grant proposal to a particular entity, or the entity proposes that a particular project be undertaken. Once a grant has been accepted, the funds are sent to FDU and then applied toward the cost of research and overhead.[1]

---

[1] FDU assumes fiscal responsibility for the grant. That is, once the grant has been accepted FDU guarantees that the funds will cover the cost of the research and the overhead. The funds are disbursed by FDU accordingly.

As a result of the destruction stemming from Hurricane Hugo, FDU collected on two insurance policies, totaling $1.4 million, which covered both the 14 buildings and equipment of WIL. Rather than reinvest the proceeds of the insurance policies into WIL, FDU has decided to close the facility and divert the funds elsewhere.

On August 15, 1990, FDU sent a letter to the Commissioner of Labor notifying him of FDU's intention to close the WIL facility on August 31, 1990, and further informing him that notice had been given to WIL employees on June 21, 1990, and that the employees will be paid through September 20, 1990.

The Plaintiffs base their claim for a preliminary injunction on three factors. First, they claim that the Plant Closing Act entitles them to formal notice of the closing of the WIL facility and a right of first refusal to purchase the property within 90 days after the notice. They allege that FDU failed to comply with the notice provisions of the Act, and that such failure constitutes irreparable harm. Second, the Plaintiffs claim that employees whose employment are subject to the policies and procedures of the FDU faculty handbook, have not been given the notice required under Chapters XIII and XXII of the handbook entitled "Termination due to Discontinuance of an Academic Program or Department" and "Financial Exigency" respectively. They also claim FDU failed to comply, and will continue its non-compliance, with other procedures required under Chapters XIII and XXII, all to the irreparable harm of the Plaintiffs. Lastly, the Plaintiffs claim that if FDU is allowed to shut down the WIL facility they will be unable to complete their research projects and as a result scientific studies which will provide significant information to the global research concerns of global climate change and biodiversity, will be irreparably damaged by being discontinued.

## DISCUSSION

A preliminary injunction is an extraordinary remedy which should be granted only when necessary to protect the moving party from irreparable injury and to preserve the court's ability to render a meaningful decision after a trial on the merits. Van Arsdel v. Texas A. & M. University, 628 F.2d 344 (5th Cir. 1980) (citing Canal Authority of the State of Florida v. Calloway, 489 F.2d 567 (5th Cir. 1974)). Such a drastic remedy should not be granted unless the movant, by a clear showing, carries the burden of persuasion. 11 C. Wright & A. Miller, Federal Practice and Procedure § 2948 (1973). The drastic and ex-

traordinary remedy of injunctive relief will not be granted unless the right is clear, the damage irreparable and the remedy at law inadequate to prevent a failure of justice. City of Omaha v. Rubin, 128 N.W.2d 814, 177 Neb. 217 (1964).

 In this jurisdiction, it is well settled law that a preliminary injunction will not issue unless the moving party successfully carries the burden as to each of the following four criteria:

> (1) irreparable harm to the plaintiff unless the injunction is granted;
>
> (2) threatened injury to plaintiff is greater than any harm injunction may cause defendant;
>
> (3) probability of eventual success in the litigation; and
>
> (4) granting injunction does not disserve the public interest.

See Delaware River Port Authority v. Transamerican Trailer Transport, Inc., 501 F.2d 917 (3rd Cir. 1974).

Because I am convinced that Plaintiffs have made a clear showing they have satisfied the four required elements on the notice issue of the Plant Closing Law, 24 V.I.C. §§ 471–478 (1989 Supp.), a preliminary injunction shall be granted as to that issue. Each required element shall be discussed in turn.

## A. *Probability of Success in the Merits*

Plaintiffs allege that notice was not given as required under the advance notification section of the Virgin Islands law pertaining to plant closings. That section provides as follows:

> Every employer who is closing a facility shall at least 90 days prior to the plant closing give advance notification to the Commissioner, any affected employees, and if the employees are represented by a labor union, to such union.

24 V.I.C. § 472.

Additionally, the Act requires that the advance notification be in writing. 24 V.I.C. § 471(1).

In the instant case, testimony at the hearing on Plaintiffs' petition for injunctive relief showed that FDU first gave WIL employees written notice by a letter dated June 21, 1990, which was delivered to WIL employees on June 23, 1990. Written notice to the Commissioner of Labor was delivered on August 15, 1990, advising the Commissioner that FDU would discontinue operating WIL on August 31, 1990 and that the employees would be paid through September 20, 1990.

96

The Act's language as it pertains to the 90 day prior written notice is clearly and unambiguously set forth. It requires at least 90 days advance notice to the Commissioner, affected employees and unions, if any.

The Act is obviously designed to protect the employees in the territory. By requiring that employers provide at least 90 days advance notification before closing down their operations, employees are assured they are not left jobless overnight. This 90 day period also allows them a reasonable period within which they may search for employment, and take advantage of any employment opportunities which may arise during that period. It also provides employees sufficient time to take the necessary steps to protect any rights which they may have accrued during their period of employment.

Indeed, this Act creates new rights for employees in the territory and for the Government of the Virgin Islands. Where the plant to be closed is for sale, the employees are given a right of first refusal to purchase the facility within 90 days of the notification. 24 V.I.C. § 475. Where the employees do not exercise their right to purchase the facility, then the Government of the Virgin Islands may do so within 60 days after the employees' right of first refusal has terminated.

■■ Where, as in the case at bar, a statute specifies the manner of giving notice, that method is exclusive and any means of providing notice other than that provided by the statute is ineffective. 58 Am. Jur. 2d Notice § 28 (1989). "Generally, where notification is required for some definitive purpose and where valuable interests of the addressee are being destroyed, strict adherence to the prescribed procedure is required." Glenn Chaffer, Inc. v. Kennedy, 37 Conn. Supp. 654, 433 A.2d 1018, 1021 (1981) (citing 1 Merril, Notice § 509). Additionally, as noted above, this is a statute creating new rights and it is a rule of statutory interpretation that such statutes are mandatory and should be strictly construed. See 2A N. Singer Sutherland Statutory Construction § 57.18 (4th ed. 1984). Since the statute should be strictly construed, proper notice under § 472 is absolutely essential because should the employees fail to exercise their right to purchase within the statutorily prescribed time limit, they lose that right.

■ In the instant case, FDU notified WIL employees on June 23, 1990, and closed down the facility 69 days later on August 31, 1990. In the case of the Government, FDU provided notice only 16 days prior to the date it closed down WIL. On these facts alone, Plaintiffs have made a clear showing that FDU failed to comply with 24 V.I.C.

§ 472. They are therefore likely to succeed on the merits on this issue.

## B. *Irreparable Injury*

■■■ The prime prerequisite for injunctive relief is the threat of irreparable future injury. Quechan Tribe of Indians v. Rowe, 531 F.2d 408 (9th Cir. 1976). In Placid Oil Co. v. United States Department of Interior, 491 F. Supp. 895, 906 (N.D. Tex. 1980) (quoting Morgan v. Fletcher, 518 F.2d 236 (5th Cir. 1975)), it was stated that:

> [t]he key word in this consideration is irreparable. Mere injuries, however substantial in terms of money, time and energy necessary expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

In short, "[a]n injury is irreparable if it cannot be undone through monetary remedies". Interox v. PPG Industries. Inc., 736 F.2d 194, 202 (5th Cir. 1984).

The Plaintiffs argue, and the Court is persuaded, that they will suffer irreparable harm if FDU does not comply with the notice provision of the Plant Closing Act. As previously stated, § 472 of the Act requires that notice be given to the Commissioner and affected employees (or if employees are represented by a labor union to such union) at least 90 days prior to the plant closing. Section 475 is a related provision which provides as follows:

> Employees affected by a plant closing shall have the right of first refusal to purchase an affected facility within 90 days of the employer's notice to close the facility as provided by section 472 of this chapter. If the employees do not elect to purchase the facility the Government of the Virgin Islands shall maintain an option to purchase such facility for a period of 60 days.

24 V.I.C. § 475.

By the clear and unambiguous language of the statute the right of first refusal to purchase the facility under § 475 accrues only during the 90 day period following the advance notice to be given under § 472. Unless notice is given pursuant to § 472 there will be no 90 day period in which to measure the accrual of Plaintiffs' right of first refusal to purchase the facility. Accordingly, compliance with the notice requirements of § 472 is crucial to the Plaintiffs' right under §

475. If the notice given by FDU is ineffective then the Plaintiffs have no statutory right of first refusal to purchase the WIL facility.

Plaintiffs' loss of their right of first refusal to purchase the WIL facility will certainly cause irreparable harm. To this extent the Plaintiffs have provided competent evidence that FDU is negotiating with a private individual for the sale of the facility. FDU has presented nothing to refute this evidence. Thus, the Court must conclude that Plaintiffs are in immediate danger of losing their right of first refusal.

This is not a case in which the Plaintiffs' rights stem from a bargained for contract, the breach of which may be ascertained and compensated for in money damages. Plaintiffs' right of first refusal is statutory and cannot be compensated for in money damages. Once the right is unjustly taken, it is forever lost.

Moreover, the WIL facility itself is unique. It is undoubtedly the only one of its kind in the Caribbean and possibly the world. The equipment, which took years to accumulate, is especially suited for the study of tropical marine research, particularly coral reefs, sea grass beds, and tropical marine organisms. Over the 19 year history of the facility, priceless research data on tropical marine systems have been assimilated. The land on which WIL is located provides easy access to docking facilities, and to the tropical marine environment. Furthermore, the facility is unique to these particular Plaintiffs, all of whom are scientists, technicians, or support staff who have dedicated their lives and committed their professional reputation to the research conducted at WIL.

■ In United Church, Etc. v. Medical Center Commission, 689 F.2d 693, 701 (7th Cir. 1982), the court stated that "[i]t is settled beyond the need for citation [*] that a given piece of property is considered to be unique, and its loss is always an irreparable injury". Other authorities have indicated that a preliminary injunction is appropriate where property is involved, since property is always unique under general principles of the law of equity, and its possible loss or destruction usually constitutes irreparable harm. See Bennett v. Dunn, 504 F.Supp. 981 (D. Nev. 1980); 42 Am. Jur. 2d "Injunctions" §§ 48–49 (1969). Likewise, this Court concludes that the WIL facility is unique, and that the Plaintiffs will suffer irreparable injury were they to lose their statutory right of first refusal to purchase the facility.

## C. *Injury to Plaintiff vs. Injury to Defendant*

FDU argues that if an injunctive relief issues in this case, it will be required to spend money it does not want to spend on an asset it no longer wants. On this record, it appears that the most harm which can be occasioned upon FDU is an expenditure of funds. On the other hand, if an injunction is not granted, FDU can continue its negotiations to sell WIL, indeed effect a sale of WIL, thereby precluding Plaintiffs from the opportunity of purchasing a unique asset and invading their statutory rights. If injunctive relief is not granted, FDU will be allowed to engage in conduct which is inherently destructive of the employees' rights. On this record, Plaintiffs have clearly shown that any harm that may be occasioned upon FDU by the granting of injunctive relief is much less than any harm which would be inflicted upon the Plaintiffs if a preliminary injunction does not issue.

■ A final word on this third requirement is in order. This is a court of equity and FDU's claimed injury can only be said to result from its own failure to comply with the advance notification provision of the Virgin Islands Plant Closing Act. Had FDU given the advance notice required under § 472, there would be no need to expend funds to keep the WIL facility open for any additional period. The statute, however, clearly contemplates that the right of first refusal to purchase the WIL facility will accrue during a 90 day period in which the facility is a going concern. In this way, if the affected employees do exercise their right of first refusal, there will be little or no interruption of business, and correspondingly, little or no disruption in the lives of the employees. Furthermore, if the facility is not a going concern during the time the right of first refusal is in effect, there is a serious threat that assets may be dissipated and equipment effectively put out of working order. Under the circumstances, the harm to FDU stemming from the grant of a preliminary injunction is far less than the harm that would be inflicted upon the Plaintiffs if the preliminary injunction is not granted.

### D. *The Public Interest*

■ The final requirement which the Plaintiffs must satisfy in order to obtain injunctive relief is that the granting of the injunction shall not adversely affect the public interest. As stated earlier, this statute is designed to protect the rights of the territory's employees.

Plainly, the public interest in this case cannot be disserved by the granting of an injunction, the effect of which will be to require compliance with a statute enacted by the Virgin Islands legislature. Indeed, not to grant the injunction in this case is to condone a clear circumvention of the statute. The issuance of an injunction herein can only serve to promote the public interest.

## CONCLUSION

Because the Court has determined that the notice provided to Plaintiffs is ineffective, it need not address, at this juncture, the other legal factors which Plaintiffs claim also entitle them to injunctive relief. Once FDU gives the notice as required by the Act, the other issues will be ripe for review.

■■■ In conclusion, the Court holds that Plaintiffs have clearly shown a violation of 24 V.I.C. § 472 by FDU and a likelihood of success on the merits. They have likewise shown irreparable and immediate injury if an injunction does not issue, outweighing any harm to FDU if an injunction does issue. Finally, Plaintiffs have clearly demonstrated an absence of any harm to the public interest. For these reasons, Plaintiffs' request for injunctive relief will be granted and the requested preliminary injunction shall issue. Plaintiffs shall be required to post security in this case pursuant to Fed. R. Civ.Pro. 65(c) in the sum of $100,000.00.

## ORDER

THIS MATTER is before the Court on Plaintiffs' motion for a preliminary injunction pursuant to Fed. R. Civ. Proc. 65.

In accordance with this Court's memorandum opinion issued on September 12, 1990, it is hereby

ORDERED that Fairleigh Dickinson University, its agents, servants, employees and all persons acting under its direction are hereby enjoined and restrained from closing the Fairleigh Dickinson University West Indies Laboratory, Inc., known as the "West Indies Laboratory" located at Teague Bay, Christiansted, St. Croix, United States Virgin Islands, and is ordered to continue to operate and maintain the Fairleigh Dickinson University West Indies Laboratory, Inc. in a safe and secure manner until there has been full compliance with 24 V.I.C. § 472; and it is

FURTHER ORDERED, pursuant to Fed. Rule Civ. Proc. 65(c), that Plaintiffs shall post security in the sum of $100,000.