**PA. COACH LINES, INC., d/b/a Airport Limousine Service, Inc., and Checker Service Company, Plaintiff,**

v.

**PORT AUTHORITY OF ALLEGHENY COUNTY, Defendant.**

Civ. A. No. 94–650.

United States District Court, W.D. Pennsylvania.

Dec. 12, 1994.

Steven F. Kessler, McKeesport, PA.

Dale Hershey, Pittsburgh, PA.

## MEMORANDUM OPINION

BLOCH, District Judge.

Presently before this Court are cross-motions for summary judgment filed by plaintiff and defendant pursuant to Fed.R.Civ.P. 56. For the reasons set forth in this opinion, this Court will grant defendant's motion and will deny plaintiff's motion.

### I. Factual background

Defendant, Port Authority of Allegheny County, is a governmental agency that regulates the transportation of passengers for hire in Allegheny County, Pennsylvania. Plaintiff, a Pennsylvania corporation engaged in the business of providing airport transfer services, is regulated by defendant. Since the early 1980's, defendant has granted plaintiff the authority to provide transportation services between various locations in suburban Allegheny County and the Greater Pittsburgh International Airport (Airport).

In 1988, defendant allegedly granted another carrier, Airlines Transportation Company (Airlines), the exclusive right to provide scheduled airport transfer services between hotels in and around Pittsburgh, Pennsylvania, and the Airport. Defendant claims to have entered into the ten-year exclusive agreement in order to settle a legal dispute with Airlines.

Plaintiff asserts that, like Airlines, plaintiff had been the only carrier with authority to provide airport transfer services between certain locations and the Airport. On October 22, 1993, however, defendant adopted a resolution that broadened the number of carriers that could provide airport transportation services in "plaintiff's territory" but did not affect Airlines' exclusive right to provide transportation services.

Plaintiff filed the instant action against defendant as a result of defendant's October resolution. Plaintiff's complaint asserts defendant's refusal to permit plaintiff and other carriers to operate in Airlines' territory constitutes a violation of Article I, Section 8 of the United States Constitution (the Commerce Clause), 15 U.S.C. § 1 (the Sherman Anti–Trust Act), and the Fourteenth Amendment of the United States Constitution.

### II. Defendant's motion for summary judgment

Defendant has filed a motion for summary judgment with respect to all of plaintiff's claims. Defendant asserts numerous

legal arguments in support of its motion, and the arguments that have influenced this Court's decision to grant summary judgment in favor of defendant will be discussed below.[1]

### A. Legal standard

■ This Court may grant summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir.) (en banc), *cert. dismissed*, 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). Further, when considering a motion for summary judgment, this Court must examine the facts in a light most favorable to the party opposing the motion. *International Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946, 949 (3d Cir.1990).

### B. Plaintiff's Commerce Clause claim

Defendant asserts that it is entitled to summary judgment on plaintiff's Commerce Clause claim because defendant's resolution does not discriminate against interstate commerce in favor of intrastate commerce. (Defendant's brief in support of motion for summary judgment, at 9). Plaintiff contends, however, that defendant's resolution protecting Airlines' exclusive right to provide airport transportation services "constitutes a discriminatory burden [upon interstate com-

merce] on its face." (Plaintiff's reply memorandum in support of summary judgment, at 5). Plaintiff argues that defendant intentionally favored Airlines and "in doing so purposely discriminated against plaintiff and all other companies providing service to the airport in interstate commerce." (*Id.* at 7).

### 1. The Commerce Clause

The Commerce Clause to the United States Constitution[2] grants Congress the power to regulate commerce among the several states. "The primary purpose behind the Commerce Clause is to ensure that 'our economic unit is the Nation' rather than individual states." *Norfolk Southern Corp. v. Oberly*, 822 F.2d 388, 399 (3d Cir.1987) (citation omitted). Thus, although the Commerce Clause speaks in terms of powers bestowed upon Congress, the Supreme Court has long recognized that the Commerce Clause limits the powers of states and local governments to impose unreasonable burdens upon interstate trade. *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 471, 101 S.Ct. 715, 727–28, 66 L.Ed.2d 659 (1981); *see also Norfolk Southern Corp.*, 822 F.2d at 392; *Executive Town and Country Services, Inc. v. City of Atlanta*, 789 F.2d 1523, 1525–26 (11th Cir.1986).

■ A fundamental prerequisite to finding that a state regulation unduly burdens interstate commerce is that the regulation discriminates against interstate commerce in favor of intrastate commerce. The Third Circuit has stated:

> The "incidental burden on interstate commerce" appropriately considered in Commerce Clause balancing is the degree to which the state action incidentally discrimi-

---

1. Defendant originally moved for summary judgment on the ground that this Court lacked jurisdiction to hear plaintiff's claims. Defendant argued that as an agency of the Commonwealth of Pennsylvania, defendant was immune from suit in federal court under the Eleventh Amendment. (Defendant's brief in support of motion for summary judgment, at 2–5). Defendant has since acknowledged, however, that this Court may have jurisdiction over this action (defendant's brief in opposition to plaintiff's motion for summary judgment, at 8 n. 4), because the Third Circuit has recently held that a regional transit authority is not a state agency for purposes of the

Eleventh Amendment. *Bolden v. Southeastern Pennsylvania Transportation Authority*, 953 F.2d 807, 812–21 (3d Cir.1991), *cert. denied*, — U.S. ——, 112 S.Ct. 2281, 119 L.Ed.2d 206 (1992). In light of the similarity between defendant and the defendant authority in *Bolden*, this Court finds that the Eleventh Amendment does not act as a jurisdictional bar in this case.

2. "The Congress shall have power ... to regulate Commerce ... among the several states...." U.S. Constitution, Art. I, Section 8, Clause 3.

nates against interstate commerce *relative to intrastate commerce. It is a comparative measure. There conceivably is language suggesting that any increased costs imposed on out-of-state interests, in an absolute sense, are relevant burdens regardless of whether the same costs are imposed on in-state interests. However, we find that the holdings of the Supreme Court case law, consistent with the anti-protectionism purpose of the Commerce Clause, apply the much narrower comparative burden concept.* As earlier noted, virtually all state regulation involves increased costs for those doing business with the state, including out-of-state interests doing business in the state as well as in-state interests. In this absolute sense, virtually all state regulation "burdens" interstate commerce. *Where the "burden" on out-of-state interests is no different from that placed on competing in-state interests, however, it is the burden on commerce rather than a burden on interstate commerce....*

*Norfolk Southern Corp.,* 822 F.2d at 406 (emphasis added).[3] *See also Huron Portland Cement Co. v. City of Detroit,* 362 U.S. 440, 448, 80 S.Ct. 813, 818–19, 4 L.Ed.2d 852 (1960) ("State regulation, based on the police power, which does not discriminate against interstate commerce or operate to disrupt its required uniformity, may constitutionally stand."). As the United States Supreme has stated, the Commerce Clause "protects the interstate market, not particular intrastate firms, from prohibitive or burdensome regulation." *Exxon Corp. v. Governor of Maryland,* 437 U.S. 117, 127–28, 98 S.Ct. 2207, 2214–15, 57 L.Ed.2d 91 (1978); *see also Exec-*

*utive Town and Country Services, Inc.,* 789 F.2d at 1525–26.

### 2. Application of law to the instant case

■ In the instant case, defendant's resolution does not have a discriminatory burden upon interstate commerce. The alleged burden identified by plaintiff is that defendant's resolution prohibits plaintiff—*an in-state carrier*—and other carriers from providing certain transportation services. This burden, however, is a nondiscriminatory burden that must be shouldered by all carriers in Allegheny County, regardless of state affiliation.[4]

Thus, because defendant's resolution imposes a nondiscriminatory burden on interstate commerce, this Court will enter summary judgment in favor of defendant on plaintiff's Commerce Clause claim set forth in plaintiff's complaint.

### C. Plaintiff's Sherman Act claim

Defendant asserts that it is entitled to summary judgment on plaintiff's claim under the Sherman Act because defendant is an agency of the state and, therefore, defendant is immune from the application of federal anti-trust laws under the judicially-created "state action exemption." Plaintiff contends that defendant is a local, rather than a state, agency and that the state action exemption does not protect defendant's conduct from the reach of federal anti-trust laws.

### 1. The state action exemption

In *Parker v. Brown,* the United States Supreme Court held that federal anti-trust laws do not reach anti-competitive actions of a state acting through its legislature. 317

---

**3.** Plaintiff has argued that the Third Circuit's *Norfolk* analysis is not relevant to this case because defendant's resolution involves arbitrary, economic protectionism and is, therefore, per se invalid. (Plaintiff's reply memorandum in support of summary judgment, at 5–7). Granted, state regulation that constitutes economic protectionism is subject to rigid scrutiny, *City of Philadelphia v. New Jersey,* 437 U.S. 617, 623–24, 98 S.Ct. 2531, 2535, 57 L.Ed.2d 475 (1978); however, defendant's resolution does not involve "economic protectionism" as that term is used in Commerce Clause doctrine. Economic protectionism involves "those state measures that discriminate on their face against out-of-state inter-

ests in favor of in-state interests." *Norfolk Southern Corp.,* 822 F.2d at 400. While defendant's resolution may favor *one company,* the resolution does not favor in-state interests as a whole.

**4.** In fact, plaintiff has not identified any out-of-state carriers who are "harmed" by defendant's resolution. Further, even if plaintiff construed defendant's resolution as a burden on out-of-state travelers—assuming plaintiff has standing to argue this point—the burden would still be nondiscriminatory because in-state travelers would also "suffer" from the resolution.

U.S. 341, 350–51, 63 S.Ct. 307, 313–14, 87 L.Ed. 315 (1943). The Court justified the "state action exemption" by noting that there was "no suggestion of a purpose to restrain state action in the [Sherman] Act's legislative history" and because the exemption supported twin policies of federalism and state sovereignty. *Id.* at 350–52, 63 S.Ct. at 313–14; *see also FTC v. Ticor Title Insurance Co.*, 504 U.S. 621, ——, 112 S.Ct. 2169, 2175, 119 L.Ed.2d 410 (1992) ("[F]ederal anti-trust laws are subject to supersession by state regulatory programs.").

■ Over the years, the Supreme Court has extended the scope of the *Parker* state action exemption. In *Town of Hallie v. City of Eau Claire,* 471 U.S. 34, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985), the Court expressly held that local governments are entitled to invoke the state action exemption so long as the local government can demonstrate that it is engaging in challenged activities pursuant to a "clearly expressed state policy" to displace competition in a regulated area. *Id.* at 40, 105 S.Ct. at 1717; *see also Campbell v. City of Chicago,* 823 F.2d 1182, 1184 (7th Cir.1987) (city exempt from anti-trust liability under the state action exemption); *Woolen v. Surtran Taxi Cabs, Inc.,* 801 F.2d 159, 161 (5th Cir.1986), *cert. denied,* 480 U.S. 931, 107 S.Ct. 1567, 94 L.Ed.2d 759 (1987) (same); *Executive Town and Country Services, Inc.,* 789 F.2d at 1529 (same). A state legislature does not have to explicitly authorize anti-competitive conduct for the *Parker* exemption to apply, if anti-competitive effects would logically result from a local government's broad authority to regulate. *Town of Hallie,* 471 U.S. at 42, 105 S.Ct. at 1718; *see also City of Columbia v. Omni Outdoor Advertising, Inc.,* 499 U.S. 365, 372–73, 111 S.Ct. 1344, 1349–50, 113 L.Ed.2d 382 (1991) (state action exemption applies if suppression of competition is a "foreseeable result" from what a statute authorizes).

### 2. Application of the state action exemption to the instant case

■ Applying the *Parker* state action exemption to the instant case, defendant is immune from plaintiff's anti-trust claim. The Pennsylvania Supreme Court has expressly held that defendant is an agency of the Commonwealth of Pennsylvania, entitled to sovereign immunity. *Marshall v. Port Authority of Allegheny County,* 524 Pa. 1, 568 A.2d 931, 933 (1990).[5] Therefore, as a state agency, defendant's regulation of airport transportation services falls within the ambit of the *Parker* doctrine and is not subject to review under federal anti-trust laws.

■ Assuming *arguendo* that defendant is a local, rather than a state, agency as plaintiff asserts, defendant would still be entitled to *Parker* immunity under the principles set forth by the Supreme Court in *Hallie.* The Pennsylvania state legislature has vested defendant with extensive regulatory discretion over public transportation. *See* 55 Pa.S.A. § 552(13). Specifically, the Pennsylvania state legislature has granted defendant "all powers necessary and convenient for carrying out" the purpose of planning, acquiring, approving, maintaining, operating, and regulating transportation systems in Allegheny County. 55 Pa.S.A. § 553(b). Further, 55 Pa.S.A. § 553(b)(9) provides that defendant "shall determine by itself exclusively, the facilities to be operated by it and the services to be available to the public."

In light of this "broad regulatory authority" that the Pennsylvania legislature has granted to defendant, it is foreseeable that defendant's operation of its transportation system would have anti-competitive effects. Following the rationale of the Supreme Court's *Hallie* decision, defendant is thus entitled to invoke the state action exemption and is not subject to the reach of federal anti-trust laws. Consequently, this Court

---

**5.** The fact that this Court has held that defendant is not a state agency for purposes of the Eleventh Amendment does not preclude a determination that defendant is a state agency for purposes of the state action exemption in light of the particularized factors that courts consider when determining whether an entity is a state agency under the Eleventh Amendment. *Bolden,* 953 F.2d at

815 n. 8. Because the state action exemption is founded on principles of federalism and state sovereignty, this Court finds it appropriate to follow the Pennsylvania Supreme Court's lead and holds that defendant is a state agency for purposes of the state action exemption. *See also Hancock Industries v. Schaeffer,* 811 F.2d 225, 232 n. 4 (3d Cir.1987).

will grant defendant's motion for summary judgment on plaintiff's claim under the Sherman Act.

### D. Plaintiff's equal protection claim

Defendant also contends that it is entitled to summary judgment on plaintiff's claim under the Equal Protection Clause of the Fourteenth Amendment because "even if one assumes [that defendant passed the resolution for] a discriminatory purpose, application of the rational basis test demonstrates that there were legitimate reasons underlying the adoption of the resolution." (Defendant's brief in support of motion for summary judgment, at 18–19). Plaintiff states that defendant's resolution is arbitrary and discriminatory and fails the rational basis test. (Plaintiff's reply memorandum in support of motion for summary judgment, at 6–7).

Economic regulation on the part of a state entity is presumed to be constitutional under the Equal Protection Clause if it is rationally related to a legitimate state interest. *City of New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511 (1976). The Supreme Court has consistently held that states should be accorded wide latitude in the regulation of their local economies. *Id.* "In short, the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines." *Id.*

Utilizing the lenient standard set forth above, this Court finds that defendant had a rational basis for adopting the resolution in its present form. Defendant has provided evidence that it entered into the exclusive agreement with Airlines in order to avoid protracted, costly litigation that could have ultimately harmed the citizens of Allegheny County—who would eventually bear the costs of such litigation. (Defendant's Exhibits, affidavit of Alan Beihler, at ¶¶ 12–13). In addition, the exclusive agreement is for a limited period and after 1998, defendant will have the ability to determine whether additional companies should provide transportation services in Airlines' territory. Because defendant had a rational basis for enacting its resolution, this Court will enter summary judgment in favor of defendant on plaintiff's equal protection claim.

### III. Plaintiff's motion for summary judgment

This Court's resolution of defendant's motion for summary judgment effectively resolves plaintiff's motion for summary judgment. Thus, for the reasons set forth above, this Court will deny plaintiff's motion for summary judgment.

An appropriate Order will be issued.