**RAILROAD YARDMASTERS OF AMERICA**

v.

**PENNSYLVANIA RAILROAD COMPANY, Appellant.**

**No. 11477.**

United States Court of Appeals
Third Circuit.

Argued Feb. 23, 1955.

Decided July 1, 1955.

Owen B. Rhoads, Barnes, Dechert, Price, Myers & Rhoads, Philadelphia,

Pa., of counsel (Robert M. Landis, Guy W. Knight, Richard N. Clattenburg, Philadelphia, Pa., for appellant, on the brief).

Milton Kramer, Washington, D. C. (Edward Davis, Philadelphia, Pa., for appellee on the brief).

Before GOODRICH, KALODNER and STALEY, Circuit Judges.

STALEY, Circuit Judge.

The defendant, Pennsylvania Railroad Company (Railroad), appeals from an order granting a preliminary injunction prohibiting it from giving effect to an agreement changing the wages, rules, and working conditions of its yardmasters. Prior to the order, the court had dismissed the railroad's motion to dissolve a temporary restraining order which had been issued.

For many years the Railroad Yardmasters of America (Union), a national labor organization for the purposes of the Railway Labor Act, 45 U.S.C.A. § 151 et seq., has represented the defendant's employees in the craft or class of yardmasters. Its negotiations with the Railroad were customarily carried on by a General Grievance Committee (Committee), whose head was known as the General Chairman. After a series of conferences, the Railroad and the Committee executed an agreement on September 30, 1954, the provisions of which were to be put into effect on November 1st of that year. On October 1, 1954, Schoch, the Grand President of the Union, was informed of the negotiations and of the agreement which had resulted. He thereupon advised the Railroad that the agreement could not become effective without his approval, which he declined to give. On October 19, 1954, the Railroad advised the Union that it would put the agreement into effect on November 1, 1954, despite Schoch's disapproval. On October 29, 1954, having been advised by Schoch of the urgency of the situation, the National Mediation Board notified both parties that it was proffer-

ing its services and that it would arrange for future conferences. The Railroad deferred the effective date of the changes until November 10, 1954, to permit the Board to review the case. The Board has taken no further action. When the Railroad thereafter threatened to put the agreement into effect, the action in the district court was commenced, and a temporary restraining order was issued.

After a hearing, the district court, upon a finding that irreparable harm would result to the Union and that the working conditions of the yardmasters would become chaotic, issued a preliminary injunction. The Railroad contends that because of the Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq., the district court does not have jurisdiction to grant injunctive relief in this labor dispute. We do not agree.

The Union requested an injunction because the Railroad threatened to commit acts in violation of Section 2, Seventh, and Section 6 of the Railway Labor Act.[1]

Section 2, Seventh, prohibits a carrier (here the defendant railroad) from changing rates of pay, rules, or working conditions as embodied in agreements, unless such changes are made in the manner prescribed in such agreements or in Section 6 of the Act.

The Union claimed that the Railroad threatened to make changes which would affect wage rates and that the changes were not being made as prescribed in any agreement, nor were they being made as provided in Section 6.

If the Union's contentions are correct, the effect of an injunction is to proscribe a threatened violation of the explicit command of the Railway Labor Act. Under such circumstances, it is clear that the prohibitions of the Norris-LaGuardia Act that injunctions in "labor disputes" shall not issue, is not applicable. Virginian Railway Co. v. System Federation, 1937, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789; Graham v. Brotherhood of Locomotive Firemen, 1949, 338 U.S. 232, 70 S.Ct. 14, 94 L.Ed. 22; Brotherhood of Railroad Trainmen v. Howard, 1952, 343 U.S. 768, 72 S.Ct. 1022, 96 L. Ed. 1283; Rolfes v. Dwellingham, 8 Cir., 1952, 198 F.2d 591.

The Railroad's next contention is that the district court erred when it issued the injunction because the evidence clearly showed no threatened violation of the Railway Labor Act. There would be no threatened violation if (1) the alleged September 30, 1954, agreement was a valid and binding agreement, or if (2) the Railroad had complied with the explicit requirements of Section 6 concern-

1. Section 2, Seventh, reads as follows:
    "§ 2. General Duties.
    *    *    *    *    *
    "Seventh. Change in pay, rules, or working conditions, contrary to agreement or to section 6 forbidden.
    "No carrier, its officers, or agents shall change the rates of pay, rules, or working conditions of its employees, as a class, as embodied in agreements except in the manner prescribed in such agreements or in section 6 of this Act." 45 U.S.C.A. § 152, Seventh.
    Section 6 reads as follows:
    "§ 6. Procedure in changing rates of pay, rules, and working conditions.
    "Carriers and representatives of the employees shall give at least thirty days' written notice of an intended change in agreements affecting rates of pay, rules, or working conditions, and the time and place for the beginning of conference be-

tween the representatives of the parties interested in such intended changes shall be agreed upon within ten days after the receipt of said notice, and said time shall be within the thirty days provided in the notice. In every case where such notice of intended change has been given, or conferences are being held with reference thereto, or the services of the Mediation Board have been requested by either party, or said Board has proffered its services, rates of pay, rules, or working conditions shall not be altered by the carrier until the controversy has been finally acted upon, as required by section 5 of this Act, by the Mediation Board, unless a period of ten days has elapsed after termination of conferences without request for or proffer of the services of the Mediation Board." 45 U.S.C.A. § 156.

ing notices and conferences before the implementation of changes. These were the two basic issues before the district court.

■ In reviewing the district court's tentative determination of these issues, the Railroad asks that we ignore the district court's conclusions because it says that the nature of the essential evidence was such that this appellate court is competent to draw its own conclusions. We do not agree with the Railroad that all the essential evidence was undisputed and therefore only ultimate conclusions remain to be drawn. But, this aside, what we are asked to do would, in effect, transform the court of appeals into a district court for the purposes of deciding the merits of the controversy in the first instance. The district court has issued a preliminary injunction "until further hearing or further order of this court." What additional evidence or legal argument might be forthcoming upon further hearing is pure speculation at this time. "The judge's legal conclusions, like his fact-findings, are subject to change after a full hearing and the opportunity for more mature deliberation. For a preliminary injunction—as indicated by the numerous more or less synonymous adjectives used to label it—is, by its very nature, interlocutory, tentative, provisional, ad interim, impermanent, mutable, not fixed or final or conclusive, characterized by its for-the-time-beingness." Hamilton Watch Co. v. Benrus Watch Co., 2 Cir., 1953, 206 F.2d 738, 742.

■ We are now reviewing the propriety of the issuance of a preliminary injunction. At this stage, we are concerned only to find out if the Union "has . . . raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation." Hamil-

ton Watch Co. v. Benrus Watch Co., supra at page 740. Where, as here, the harm to the Railroad from the injunction can be adequately measured in dollars, while the harm to the Union if the injunction is refused is irreparable, the raising of the substantial and serious doubts is at least sufficient to justify the issuance of a temporary injunction. Hamilton Watch Co. v. Benrus Watch Co., supra; Buffington v. Harvey, 1887, 95 U.S. 99, 24 L.Ed. 381; Doeskin Products, Inc., v. United Paper Co., 7 Cir., 1952, 195 F.2d 356.

■ Thus, if, on the record, there is a serious and substantial question as to (1) the validity of the September 30, 1954, agreement, and (2) the Railroad's compliance with Section 6 requirements, the issuance of the preliminary injunction was proper.

As to the valid and binding effect of the September 30, 1954, agreement, after hearing witnesses, the district court found:[2]

"6. All contracts heretofore reached between the plaintiff and the defendant have been subject to approval of such contracts by the Grand President of the plaintiff, and to the knowledge of the defendant no officer or representative of the plaintiff is authorized to enter into a final contract with the defendant or any other carrier, except with the approval by the Grand President or a National officer designated by him for the purpose.

"7. The plaintiff Union is made up of constituent Locals among the various Railroads, and at no time has a collective bargaining agreement such as is before this Court ever been entered into without consultation with and approval by the Grand President or a National offi-

---

**2.** It is, of course, clear that the findings of fact of the district court were not meant to be final but were tentative and solely for the purposes of the issuance of the preliminary injunction.

cer designated by the Grand President.

"8. The collective bargaining agreement currently in effect between the parties was arrived at in 1947, with the assistance of and during mediation efforts by the National Mediation Board, established by Section 4 of the Railway Labor Act.

"9. Under date of September 30, 1954, with a purported effective date of November 1, 1954, the defendant and the General Chairman and the General Grievance Committee of the plaintiff reached an agreement, subject to approval of the Grand President, as aforesaid, and without consultation by the General Grievance Committee or the Chairman thereof with the Grand President of the plaintiff, that would make drastic and far-reaching changes in the agreement of 1947, currently in effect, and would make changes in the wage rates and earnings of Yardmasters employed by the defendant. The Grand President had no knowledge of the execution of the said purported contract nor of the negotiations leading thereto, until after the purported agreement had been executed. Said tentative agreement was submitted by the General Chairman to the Grand President of the plaintiff for his approval, and he declined to approve it. Thereafter, on October 12, 1954, the defendant was advised that since the purported agreement depended for its effectiveness upon such approval, and such approval was declined, it could not become effective."

The district court also concluded that there was no real or apparent authority in the Committee to enter into an agreement with the Railroad. An examination of the record leaves no doubt that a serious question concerning the validity of the September 30, 1954, agreement was presented.

If the agreement is not valid, the Railroad is still free to make the contemplated changes if it has complied with Section 6 of the Railway Labor Act. Concerning this, the district court found that there had been no compliance with the procedures specified in the Railway Labor Act for changing rates of pay, rules, or working conditions.

The district court was presented with contradictory evidence concerning notice (a requirement of Section 6) of change and whether notice, if given, covered the purported changes. We cannot say that the district court erred in tentatively concluding that compliance with Section 6 was missing.

We, of course, entertain no opinion at this time as to the proper final resolution of these issues.

■ The Railroad also argues that the injunction should have been denied because, under the law, a complainant must show that all reasonable efforts were made to settle the dispute. It is contended that since, under Section 6, one has a ten-day period within which to invoke the services of the Mediation Board, and, since the Union failed to invoke the services within ten days, it has, through its own fault, lost a right to injunctive relief.

Assuming, without deciding, that under proper circumstances failure to act within the ten days would be a bar to injunctive relief, the bar is not applicable here. The ten-day rule of Section 6 presupposes that proper notice of the changes to be made has been given. Here, the Union denies that the Railroad followed Section 6 procedure. If they are correct, it cannot be said they had the ten-day option because it never became operative.

Other questions raised by the appellant have been considered but present no meritorious contentions.

The issuance of the preliminary injunction will be affirmed.