178

CHICAGO, MILWAUKEE, ST. PAUL AND PACIFIC RAILROAD COMPANY, Plaintiff,

v.

ORDER OF RAILWAY CONDUCTORS AND BRAKEMEN, BROTHERHOOD OF RAILROAD TRAINMEN et al., Defendants.

No. 3047.

United States District Court
W. D. Washington, S. D.

May 6, 1964.

B. E. Lutterman, Warren H. Ploeger and James E. Nelson, Seattle, Wash., for plaintiff.

James E. Henriot, of Eisenhower & Carlson, Tacoma, Wash., for defendants.

BOLDT, District Judge.

This matter comes on for hearing pursuant to a temporary restraining order and order to show cause entered January 9, 1964, as subsequently amended. The evidence by exhibits, affidavits and offers of proof and the written memo-

randa and argument of counsel having been considered, the court concludes disposition of this matter can and should be made upon the record without further proof. The controlling facts now recited are indisputed.

By written notice to defendants dated January 7, 1964, plaintiff removed one brakeman from each of the train crews assigned to the Port Angeles to Port Townsend, Hoquiam to Maytown, and Raymond to Centralia branch lines in the State of Washington, and directed train operations on these branch lines be performed from and after January 9, 1964, with a train crew consisting of a conductor and one brakeman. Having protested such action defendant unions notified plaintiff of their intention to strike. At a prescribed time on January 9, 1964, defendant unions' members went on strike as threatened and work stopped on all of plaintiff's trains and yard operations west of Mobridge, South Dakota. Upon plaintiff's petition a temporary restraining order was entered and, although strike notices were not withdrawn, the members of defendant unions returned to work in accordance therewith. Upon application by defendants, the temporary restraining order was amended to provide return of the parties to the status quo pending final determination of the litigation.

The described occurrences resulted from a labor dispute between plaintiff and defendants as to consist of train crews and as to whether there are any work rules established by agreement or practice requiring a stipulated number of brakemen on the crews working the lines in question.

Plaintiff contends this dispute over consist of crews is a "minor" dispute [1] arising from the application or interpretation of an existing work rule which reserves in plaintiff managerial prerogative to determine the size of crews. Minor disputes, plaintiff contends, fall within the exclusive provisions of Section 3 of the Railway Labor Act, 45 U.S.C.A. § 153, and strikes incident thereto are unlawful and should be enjoined under authority of Brotherhood of R. T. v. Chicago, R. & I. R. Co., 353 U.S. 30, 1 L.Ed.2d 622, 77 S.Ct. 635 (1957); Brotherhood of Locomotive Engineers v. Louisville & N. R. Co., 373 U.S. 33, 83 S.Ct. 1059, 10 L.Ed.2d 172 (1963); and Norfolk & P. B. L. R. Co. v. Brotherhood of R. R. T., 248 F.2d 34 (4th Cir. 1957), cert. den. 355 U.S. 914, 78 S.Ct. 343, 2 L.Ed.2d 274 (1958).

Defendants contend the issue of crew consist involves a "major" dispute [2] arising under notices previously given by both parties pursuant to Section 6 of the Railway Labor Act, 45 U.S.C.A. § 156, which dispute culminated in and is exclusively governed by Public Law 88–108, 88th Congress, S.J.R. 102, enacted August 28, 1963, and by the Award of the Arbitration Board made pursuant thereto. It is defendants' position that plaintiff is not entitled to the relief it seeks but, if so, only upon condition the status quo be maintained.

Beyond doubt, the issues concerning crew consist with which this litigation is concerned are within the purview of and entirely disposed of by Public Law 88–108 and the Arbitration Board Award based on that statute. It must be conceded that these issues of crew consist were incorporated in Section 6 notices sent by plaintiff carrier on November 2, 1959, and by the defendant unions on September 7, 1960. Also, it must be admitted, as indicated by the Supreme Court of the United States in Brotherhood of Locomotive Engineers v. Baltimore & O. R. Co., 372 U.S. 284, 83 S.Ct. 691, 9 L.Ed.2d 759 (1962), that both parties exhausted the procedures provided

1. For a discussion regarding the differences between major and minor disputes and settlement procedures for each, see Elgin, J. & E. Ry. Co. v. Burley, 325 U.S. 711, 722, 65 S.Ct. 1282, 89 L.Ed. 1886 (1944).

2. See No. 1 supra.

by the Railway Labor Act for major disputes [3] and were relegated to self help in adjusting their disputes.

Congress, faced with an impending nationwide strike, enacted Public Law 88–108, which statute in general prohibited plaintiff from making any change in rules and defendants from engaging in any strike and established an arbitration board with authority to make a binding award disposing of disputes of the nature of those presented in this case and referred to by both parties in the Section 6 notices previously mentioned.[4] Pursuant to Public Law 88–108 Arbitration Board No. 282 made an award on November 26, 1963.

The Award clearly reveals that the Arbitration Board intended to totally dispose of the entire issue of crew consist encompassed in the Section 6 notices previously referred to and further intended the provisions of the award to be the exclusive remedy to resolve such issue.[5] Section I of the Award states in part, "Those portions of the carriers' notices of November 2, 1959, identified as * * * 'Consist of Road and Yard Crews', and that portion of the organization notices of September 7, 1960, identified as 'Minimum Safe Crew Consist' and implementing proposals pertaining thereto are denied except to the extent hereinafter provided."

Section III A(1) states in part, "The issue of crew consist * * * shall be remanded to the local properties for negotiation."

Section III A(2) states in part, "No change shall be made in the scope or application of rules in effect immediately prior to the effective date of this Award, whether established by agreement, interpretation, or practice * * * except by agreement, or pursuant to the provisions of this Award." [6]

■ The last quoted section read in the light of the entire award, and particularly Section III A(1), means that any change in any rule regarding crew consist, which either party to this dispute wishes to make, must be done either by agreement or pursuant to the negotiation procedures prescribed in the Award. Abiding such change, if any is so determined, it is clear that the status quo as of immediately prior to the effective date of the Award mandatorily must be maintained. It is equally obvious that the Award intended the parties to make every effort to negotiate their differences locally, and if that failed, they were to submit the dispute to a special board of adjustment provided by Section III B of the Award, the decision of which board would be binding on both parties.

The language of Section III A(1) alone, indicating that the ultimate resolu-

---

3. The holding in Locomotive Engineers that a major dispute existed is in contraposition to plaintiff's contention that the present issue of crew consist involves a minor dispute. Plaintiff contends Locomotive Engineers is not controlling because new notices, other than the notices under Section 6 of the Railway Labor Act which were given in that case, must now be served inasmuch as Section I of the Arbitration Award, subsequently referred to in the main text, states that those notices "are denied." The court does not follow this line of thinking for the reasons stated in the text.

4. See U.S.Code Congressional and Administrative News 1963, pp. 144–146, 833–843.

5. According to Section 8 thereof, Public Law 88–108 expired on February 25,

1964, one hundred and eighty days after the date of enactment. Section 4 of P.L. 88–108, however, states that, "The award shall continue in force for such period as the arbitration board shall determine in its award, but not to exceed two years from the date the award takes effect, unless the parties agree otherwise." Thus, P.L. 88–108 having expired, disposition of the present case is controlled by the Award, which under Section IV thereof is now in effect.

6. It is noted that Section III A(2) appears to contemplate the maintenance of the status quo in regard to rules only, whereas the opinion of the neutral members of the Arbitration Board, pp. 45 and 51, indicates that in prior negotiations both rules *or practices* were intended by the parties to be protected until changed.

tion of differences over consist of crews is to be solely by negotiation, is sufficient to dispose of the matter now under consideration. It would be unreasonable to interpret the Award as indicating that the issue of consist of crews was to be resolved in any way, whether by strike or unilateral change, other than in the manner prescribed by Sections III A(1) and (2). The very heart and purpose of the creation of the arbitration board and its entire activity were designed and intended to resolve crew consist disputes solely by way of the negotiation procedures specified in the Award. Any other interpretation of the law and Award would defeat both the essential purpose of Congress in passing the law and in creating the Board, and the intention of the Board in rendering its Award.

Despite the clear necessity that the issues be determined pursuant to the Award, a problem is presented as to which of the parties should initiate local negotiation proceedings under Section III A(3) of the Award, which states, in part, "Either party in interest shall give written notice of any *proposed change* in any such stipulated number of trainmen * * *" (emphasis supplied). Each side, plaintiff and defendant, contends that to give notice of a proposed change is inconsistent with its position that the rule which it desires is presently in effect. Apparently for this reason neither party has given the notice required to initiate negotiations and the lack of such notice has created an impasse precipitating the present litigation.

■ Regardless of what change is proposed, or by whom, it is clear beyond doubt that one or the other, or both, parties desire and assert a change either in a rule or application thereof. The defendants claim the existence of a rule established by practice; the plaintiff asserts no applicable rule exists and claims it has the right to unilaterally change crew consists from what they were immediately prior to the effective date of the Award. This court does not have and will not assume responsibility for determining precisely what change in rule or

rule application is sought by which of the litigants. It is sufficient that the court finds and holds that one or more of the parties is asserting a change in rule or in rule application as to the consist of crews existing immediately prior to the Award.

In these circumstances, for the reasons stated both plaintiff railroad, its officers and representatives, and the defendant unions, their officers and representatives, are hereby directed and commanded to confer and negotiate the issues concerning crew consist presently before the court according to the provisions of Section III A(3) and B of the Arbitration Award. Proposed changes and written notice thereof as required by Section III A(3), as previously discussed, are held and deemed to have been made both by plaintiff and by defendants in their written pleadings in the present cause. So as to provide for the time periods prescribed in Section III A(3), such notices will be deemed as having been given and received as of this date.

Being commanded to proceed under Section III A(3) of the Arbitration Award, the parties shall comply with the last sentence thereof, "The time and place for the beginning of conferences between the representatives of the parties in interest with respect to such proposed change or changes shall be agreed upon within ten days after the receipt of said notice, and said time shall be within fifteen days after the receipt of said notice." Thereafter, if necessary, Section III B shall be followed. These procedures, when complied with as directed, will ultimately and conclusively resolve the disputed issues between the parties to this litigation in a manner contemplated by Congress and as ordered by the Arbitration Board. Under the rulings of the court, each party may proceed as commanded without having abandoned or compromised its contentions with respect of the existence or nonexistence of any rule.

■ The restraining order previously entered as amended will be continued in

effect,[7] and the parties are commanded and directed, under penalty of contempt for failure of compliance, to negotiate on the disputed issues between them as directed by the court.

It is so ordered.

7. Under Section 6 notices from which P.L. 88–108 and the Arbitration Award are derived, injunctive relief in the nature of that granted by this court is appropriate to prohibit strikes and maintain the status quo. Railroad Yardmasters of America v. Pennsylvania R. Co., 224 F.2d 226 (3rd Cir. 1955); Railroad Yardmasters of America v. St. Louis, S. F. & T. Ry. Co., 218 F.Supp. 193 (N.D.Tex.1963). "The purpose of § 6 [is] to prevent rocking of the boat by either side until [negotiation] procedures [are] exhausted." Manning v. American Airlines, Inc., 329 F.2d 32 (2nd Cir. 1964).