# ALEX BOUDREAUX, Plaintiff
## v.
# THE SANDSTONE GROUP and LOCHRIDGE & PRIEST, INC., Defendants

Civ. No. 1014/1991

Territorial Court of the Virgin Islands

Div. of St. Croix at Kingshill

May 16, 1997

THOMAS H. HART, III, ESQ., (Alkon, Rhea & Hart), St. Croix, U.S.V.I., *for Plaintiff*

BERNARD C. PATTIE, ESQ., (Pattie & Daley), St. Croix, U.S.V.I., *for Defendant Sandstone Group*

LAD MINGUS, ESQ., (Law Offices of R. Eric Moore), St. Croix, U.S.V.I., *for Defendant Lockridge-Priest*

CABRET, *Judge*

## MEMORANDUM OPINION

In this negligence action, defendant Lochridge & Priest, Inc. ("Lochridge") has moved the Court for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. The Sandstone Group ("Sandstone") filed a notice of joinder in Lochridge's motion. On April 30, 1997, oral arguments were heard on defendants' motion. For the reasons set forth below, the Court will grant the motions for summary judgment.

## FACTUAL BACKGROUND

Lochridge, Sandstone, and Solcar, VI ("Solcar") entered into a contract with the Government of the Virgin Islands on July 13, 1990. The agreement called for all three companies, named jointly in the contract as "Contractor," to put a new roof on the Reichold Center Amphitheater ("Reichold Center") at the St. Thomas campus of the University of the Virgin Islands. The three companies agreed to share profits and losses, and each company had a discrete role to play in the joint venture. Lochridge prepared the bid for the project, provided the performance bonding, and financed the venture, while Sandstone was responsible for the administration, which included overseeing the job for the joint venture through its liaison representative, Jerry Libal. Solcar, the only one of the three companies which possessed a Virgin Islands

87

business license, obtained the necessary permits, licenses, paid the workers and acquired workmen's compensation insurance coverage.

The circumstances of plaintiff's employment are in dispute.[1] Lochridge claims that the joint venture, through Harold McElhenney, a representative of Sandstone, hired a crew of roofers run by Jack Brumley. The plaintiff's own understanding of his employment status was that he was called to St. Croix by Jack Brumley to work on his crew which had been hired by Sandstone.[2] Despite this lack of clarity as to the identity of his employer, it is clear that the plaintiff was working on the Reichold Center on October 11, 1990, when he fell 26 feet from the roof of that building to the concrete below. He sustained multiple injuries in the fall. Plaintiff sought and received workmen's compensation benefits, which were arranged by Jerry Libal of Sandstone and provided through the insurance carried by Solcar. The plaintiff has filed the instant negligence action against Sandstone and Lochridge, for injuries sustained during the course of his employment.

Defendants' motion for summary judgment is premised on the contention that at the time of plaintiff's accident, they were engaged in a joint venture with Solcar. Defendants argue that because the plaintiff benefitted from Workmen's Compensation insurance provided by Solcar, they are insulated from suit pursuant to 24 V.I.C. § 284, the Virgin Islands "exclusive remedy" provision.[3]

In opposition to defendants' motion, plaintiff asserts that Solcar was acting outside the scope of the joint venture, in an independent capacity as a first-tier contractor when it employed him. As such, plaintiff contends that the immunity provided to Solcar, who carried the workmen's compensation insurance, does not inure to

---

[1] Plaintiff testified in a deposition that he was paid in cash and expressed uncertainly as to the source of the money. The only company involved in this lawsuit which he admits ever hearing of is Sandstone.

[2] See Deposition of Alex Boudreaux. 11/13/92, p. 5-6. However, in his complaint, plaintiff states that he was working as a roofer for Solcar.

[3] The exclusive remedy provision of the Virgin Islands Workmen's Compensation Act ("WCA") provides that "[w]hen an employer is insured under this chapter, the right herein established to obtain compensation shall be the only remedy against the employer." 24 V.I.C. § 284(a).

the benefit of Lochridge or Sandstone. Alternatively, Lochridge argues that even if Solcar is found to have been an independent contractor when it employed the plaintiff, Lochridge is not liable by virtue of the independent contractor defense. Because the issue of joint venture liability is dispositive of this case, the Court does not reach Lochridge's alternative theory of nonliability.

## SUMMARY JUDGMENT

Summary judgment is provided for in Rule 56 of the Federal Rules of Civil Procedure. Rule 56(c) states that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P 56(c). In interpreting Rule 56(c), the United States Supreme Court has stated that summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In its review of a motion for summary judgment, a court must view the facts in a light most favorable to the nonmoving party and the burden of establishing that no genuine issue of material fact exists rests with the movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). An issue of material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248. The "existence of disputed issues of material fact should be ascertained by resolving 'all inferences, doubts and issues of credibility against the moving party.'" *Ely v. Hall's Motor Transit Co.*, 590 F.2d 62, 66 (3d Cir. 1978) (quoting *Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir. 1972)). However, there can be no genuine issue of material fact, where a complete failure of proof concerning an essential element of the nonmoving party's case is absent, which necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322.

The moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23

89

(1986). Once this showing has been made, the burden shifts to the nonmoving party to present affirmative evidence from which a jury might reasonably return a verdict in his or her favor. *Id.; Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). In opposing a summary judgment motion, a party may not rest on his or her pleadings, bare assertions, or conclusory allegations, but must set forth specific facts by affidavit or other sworn evidence showing there is a genuine issue as to a material fact. *Celotex*, 477 U.S. 317. When the nonmoving party's evidence in opposition to a properly supported motion for summary judgment is "merely colorable" or "not significantly probative," the court may grant summary judgment. *Anderson*, at 249-50.

In reviewing the evidence submitted, the court should grant summary judgment only when there is clearly no issue of material fact. *Id.* Further, summary judgment is appropriate when the trial judge can conclude that no reasonable trier of fact could find for the nonmovant on the basis of evidence presented in the motion and the response. *Mitsushita Elec. Indus., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

### DISCUSSION

In support of its motion for summary judgment, defendants argue that this case should be dismissed because when an employee's injuries are compensable, the workmen's compensation exclusive remedy provision bars all actions against the insureds employer. Defendants claim that the workmen's compensation insurance carried by any member of a joint venture inures to the benefit of all members, as all members of a joint venture are considered to be the "employer" for purposes of workers' compensation. *Claxton v. Vick*, 18 V.I. 337 (D.C.V.I. 1981).

### A. The Joint Venture

■■ Plaintiff opposes the motion for summary judgment on several grounds. First, plaintiff argues that immunity does not attach because no joint venture entity was ever formed and each corporation operated under its own name. A joint venture has been defined as "an association of two or more persons formed to carry out a single business enterprise for profit." 46 Am. Jur.2d Joint

Ventures, § 1 (1994) (citing *First Mechanics Bank of Trenton, N.J. v. Comm. of Internal Revenue*, 91 F.2d 275, 278 (3d Cir. 1937)). To constitute a joint venture certain factors are essential: 1) each party to the venture must make a contribution, not necessarily of capital, but by way of services, skill, knowledge, materials or money; 2) profits must be shared among the parties; 3) there must be a joint proprietary interest and right of mutual control over the subject matter of the enterprise; and 4) usually, there is a single business transaction rather than a general and continuous transaction. *See McRoberts v. Phelps*, 139 A.2d 439 (Pa. 1958) (citations omitted); 46 Am. Jur.2d Joint Ventures, § 1. The existence or non-existence of a joint venture depends upon what the parties intended in associating together. Thus, "[c]rucial to the finding of a joint venture relationship is that there be an agreement, express or implied, from which it can be said that the minds of the parties met, assenting to the creation of mutual obligations." *Sofarelli Associates, LTD. and Sofarelli Assoc., Inc. v. Luther Benjamin Const. Co.* Civil No. 78-247 (D.V.I. November 24, 1978) (citing *Richardson v. Walsh Construction Co.*, 334 F. 2d 334 (3d Cir. 1963) and *Opec., Inc. v. Scott*, 321 F. 2d 471 (10th Cir. 1963)).

In the present case, plaintiff has failed to point out any evidence in the record to support his contention that a joint venture was never formed. In fact, in plaintiff's opposition to summary judgment, he specifically refers to a joint venture and included a diagram which indicates that a joint venture between Lochridge, Sandstone and Solcar indeed existed.[4] Moreover, while there was no written agreement, the fact that a joint venture was created is evidenced by the single contract which the three companies entered into jointly with the Virgin Islands Government. The contract names all three companies jointly as "Contractor," and was signed by Leonard Christensen of Lochridge on behalf of the joint venture. Additionally, Harold McElhenney, a representative of Sandstone, wrote a letter to Adams and Associates, expressing the intention of the joint venture to participate in the bidding on the Reichhold Center project. Before the Reichhold Center contract was awarded, the University of the Virgin Islands ("UVI") wrote a

---

[4] *See* Plaintiff's Opposition to Defendant's Motion for Summary Judgment at 4.

letter to Harold McElhenney advising the joint venture of its intention to enter into a contract for the reroofing of the Melvin H. Evans Center, St. Croix. According to the deposition testimony of Alton Adams, the owner's representative for construction supervision and Anton Winston Adams, the coordinator of facilities at UVI, they understood that the construction of the Reichold Center was undertaken by the defendants and Solcar, as a joint venture.[5]

■ Further, the acts and conduct of Solcar, Lochridge and Sandstone evidence a clear intent to join together for the common purpose of putting a new roof on the Reichold Center, and to share profits and losses on that project. Additionally, the record justifies the conclusion that at all times, the three companies were actively involved in the business affairs of this venture, and all members of the joint venture were equally responsible for the job. Finally, the evidence clearly establishes that Solcar, Sandstone and Lochridge agreed to combine their property, money, effects, skill and knowledge for the sole purpose of the Reichold Center job. In light of the foregoing, the Court finds that defendants have met their burden of proving that a joint venture was formed between Lochridge, Sandstone and Solcar for purposes of the Reichold Center construction job. As such, plaintiff's contention in this respect must fail, as he has not designated any specific facts showing that there is a genuine issue for trial.[6]

## B. Solcar: Joint Venture Member or First-Tier Contractor?

Plaintiff concedes that under 24 V.I.C. § 284, workmen's compensation is generally the exclusive remedy for injuries suffered by an employee in his employment. However, plaintiff contends that Lochridge and Sandstone are not "employers" to whom section 284 applies because Solcar was acting as a first-tier contractor and not a joint venture partner when it hired the workers and purchased workers' compensation insurance. In support of this theory,

---

[5] *See*, Deposition of Alton A. Adams, Jr.,1/27/93, p. 13; deposition of Anton Winston Adams, 2/3/93, p. 27.

[6] It should be noted, that plaintiff has not directed this Court's attention to any case law allowing a negligence action against one member of a joint venture where the injured worker had received compensation under the applicable state workmen's compensation law from another member of the joint venture.

plaintiff points to deposition testimony of Gerald Libal wherein describing Solcar, he says it "was actually a joint venture partner, but they were acting as a first-tier contractor."[7] Libal also spoke of the joint venture as having "a contract with Solcar VI to do that part of the work [put the new roof on at the Reichold Center]" and he stated that "[a]ll labor on the job was done by Solcar, who in turn contracted it to Mr. Brumley."[8] Plaintiff claims that this information was corroborated by Lochridge's own part owner, Leonard Christensen. When asked during his deposition, "[a]nd in doing so [subcontracting out part of the work] he was acting as a subcontractor and not as a member of the joint venture. . . Is that your understanding of how it worked?" Christensen responded, "Yes, I believe that is right."[9] Finally, plaintiff offers deposition testimony of Don Reed, Acting President of Sandstone, who stated that plaintiff was not employed by the joint venture but was employed by a subcontractor of the joint venture.[10] Defendants contend, however, that Mr. Reed had no personal knowledge of the joint venture arrangement because he was not employed by Sandstone until sometime in May 1991, after the Reichold Center job was completed.

The deposition testimony offered by plaintiff in support of his argument that Solcar was not acting as a joint venture member when it employed him fails to "do more than show that there is some metaphysical doubt as to material facts." *Mitsushita Elec.*, 475 U.S. at 586. Mr. Brumley, whom plaintiff claims was a subcontractor under Solcar, testified at a deposition that as he perceived his job, he "was managing the [Reichold Center] job for Harold McElhenney,"[11] because he was "working for Harold McElhenney and the Sandstone group." Brumley was told that his "[pay] check had to come through Solcar because Solcar had the license to work in the Virgin Islands."[12] More important, when asked if he

---

[7] Deposition of Gerald Libal, 2/9/93, p. 7.

[8] *Id.*, at 10.

[9] Deposition of Leonard Christensen, 2/9/93, pp. 17 & 18.

[10] Deposition of Don Reed, 2/9/93, pp. 11 & 12.

[11] Deposition of Jack Brumley, 2/10/93, p. 28.

[12] *Id.* at 17.

perceived himself as a contractor contracting to Sandstone, Solcar or anybody, Brumley said that he "couldn't even carry the job as a contractor" because he "didn't have the working capital."[13] Brumley further stated that when he normally subcontracted jobs as Metal Building Specialist, he would carry his own payroll, write his own checks, do his own withholdings, and have his own insurance,[14] which were things he did not do on the Reichold Center job. Moreover, Brumley testified that in his construction supervision of the Reichold job, he was acting on behalf of the joint venture.[15] Thus, since Mr. Brumley was not a contractor on this job, but was working on behalf of the joint venture, then it follows that his crew of roofers, including plaintiff, were employees of Solcar, working on behalf of the joint venture as well.

■ The Court finds that plaintiff's claim that Solcar was acting as a first-tier contractor is "merely colorable" and insufficient to defeat summary judgment because regardless of who hired whom, "the joint venture is the de facto employer of the workers carrying out the purposes of the venture, even though technically the workers may be on the payroll of only one of the venturers and that particular venturer may provide the worker's compensation coverage." *Haas v. 653 Leasing Co.*, 425 F.Supp. 1305 (D.C.Pa. 1977). In this case, the undisputed facts establish that Mr. Brumley and his crew of workers were working in furtherance of the joint venture. Plaintiff has not once alleged that the work he did under Mr. Brumley was for any purpose other than putting a new roof on the Reichold Center, which was precisely what the joint venture contracted with UVI to do. In fact, the injuries for which plaintiff now seeks compensation were sustained while he was working on the Reichold Center job. Therefore, even if this Court found that Solcar was acting as a first-tier contractor, the evidence presented by plaintiff does not demonstrate that Solcar was acting outside the scope of the joint venture when it hired Brumley and his crew. Consequently, a reasonable jury could not return a verdict for plaintiff since whatever Solcar's employees did in furtherance of

---

[13] *Id.*

[14] *Id.* at 30-31.

[15] *Id.* at 7.

the project would inure to the benefit of the other members of the joint venture and the project itself. *Cook v. Peter Kiewit Sons Co.*, 386 P.2d 616, 618 (Utah 1963).

█ Further, a factual analysis of all of the indicia of the joint venture leads this Court to conclude that the work force, including plaintiff, was that of the joint venture and not, as plaintiff claims, of Solcar alone. Specifically, the three companies had a common purpose, that being the reroofing of the Reichold Center. Sandstone, by and through its employee Jerry Libal, executed and retained supervision and control over the work being done by Brumley and his crew of roofers, as Libal was Brumley's supervisor. This fact is substantiated by plaintiff's deposition testimony wherein he states that he worked for Jerry Libal, and got paid by Jack Brumley.[16] There has been no evidence presented to this Court that plaintiff had contact with anyone other than Libal or Brumley. Sandstone provided tools and equipment to plaintiff and the other workers. But most important, the only work performed by plaintiff and the other roofers was that of the joint venture project, the Reichold Center job, and for purposes of workers' compensation law, each individual joint venturer is the employer of all employees doing work on behalf of the joint venture. *See Conner v. El Paso Natural Gas Co.*, 599 P.2d 247, 249 (Ariz.Ct.App. 1979).[17]

## C. Joint Venture and Individual Members Immune

█ Plaintiff further claims that *Claxton* is inapposite to the case at bar because the defendants here created a joint venture, not a joint venture entity as in *Claxton*. Plaintiff's argument is without merit, as the *Claxton* court held that "the workmen's compensation insurance policy carried by the St. Croix Hotel Corporation enured to the benefit of *both* the joint venture entity and its individual members." (emphasis added) *Claxton*, at 338-339. In *Claxton*, the defendants were the nonemployer entities in a joint venture, and they argued that although only one member of the joint venture

---

[16] Boudreaux's deposition, 11/13/92, pp. 4-5.

[17] Even if this Court found that Solcar was acting as a first-tier subcontractor, plaintiff has cited no legal authority which would bar Lochridge and Sandstone, as joint venturers with Solcar from the worker's compensation exclusive remedy provision.

entity was the employing unit, all members of the joint venture are considered to be the employers for the purposes of workmen's compensation and are all, therefore, immune from suit. *Id.* at 338 (citing *Conner,* 599 P.2d at 249; *Insurance Co. of No. America v. Dep't. of Industry,* 173 N.W.2d 192 (Wis. 1970). The *Claxton* court agreed and granted summary judgment to the defendants. *See also Boatman v. Georgia Hyman Constr. Co.,* 276 S.E.2d 272, 275 (Ga.Ct.App. 1981) (a joint venture is not a distinct legal entity separate and apart from the parties composing it, and thus, an employee engaged in activities of the joint venture is an employee of each of the joint venturers under ordinary principles of agency); *Vincent v. Lake Charles Refining Co.,* 434 So.2d 170, 171 (La.Ct.App. 1983) (a joint venture and its members are covered by the workers' compensation exclusive remedy provision); *Haas v. 653 Leasing Co.,* 425 F.Supp. 1305 (D.C.Pa. 1977) (the joint venture and, derivatively, the participants in the venture, are thus the worker's "employer" for purposes of the Act and thus enjoy the protection of the exclusive remedy provision). While no joint venture entity was created in the case *sub judice,* the undisputed evidence establishes that a joint venture was created and the exclusive remedy provision does not require the creation of a joint venture entity. Rather, the law only requires that a joint venture be created. Thus, once a joint venture is established, the employees of one joint venture member are employees of each joint venturer for purposes of the workmen's compensation exclusive remedy provision.[18]

## D. 1986 Amendment to Workmen's Compensation Act

■ Plaintiff also argues that the holding in *Claxton* was pre-empted by the 1986 Amendment to 24 V.I.C. § 284. This contention

---

[18] Plaintiff cites *Rogness v. English Moss Joint Ventures,* 239 Cal. Rptr. 387 (Cal.App. 1 Dist. 1 1987), for the proposition that an employee of one party in a joint venture is not as a matter of law also an employee of the joint venture itself or the other joint venturers. *Rogness,* 239 Cal. Rptr. at 387. However, *Rogness* is inapposite to the case at bar because the plaintiffs in *Rogness* were employed by Monticello, a member of the joint venture who hired, fired, directed and controlled the work of its employees. Additionally, the plaintiffs' employment in *Rogness* also involved work elsewhere on Monticello's other non-joint venture projects.

Furthermore, *Rogness* is not dispositive precedent on the issues before this Court, and as counsel for Lochridge points out, given the subsequent opinion of *Orsoco v. Sun-Diamond Corp.,* 60 Cal. Rptr. 2d 179 (Cal. App. 5 Dist. 1997), it has doubtful weight even in California.

must be rejected, as the definition of an "employer" as it applies to workmen's compensation, was not affected by virtue of the 1986 Amendment.[19] Title 24, § 251 of the Virgin Islands Code states that "'[e]mployer' means the Government of the United States Virgin Islands, all public and quasi-public corporations, any person or body of persons whether incorporated or not, any partnership or association, contractors and subcontractors." As previously noted, a joint venture has been defined as a partnership for a single transaction and recognized as a subspecies of partnership. *See Fountain Valley Corp. v. Wells,* 19 V.I. 607 (D.V.I. 1983). *See also In Re PCH Assoc.,* 949 F.2d 585 (2d Cir. 1991) (court found that joint venture was in the nature of a partnership limited to a particular venture). Thus, inasmuch as the 1986 Amendment neither attempted or intended to eliminate a joint venture from the protection of the Workmen's Compensation Act, a joint venture would clearly fall within the statutory definition of "employer" forth in 24 V.I.C. § 251.

## D. The Joint Venture as Boudreaux's Employer

Finally, plaintiff attempts to limit the employer status to Solcar by restricting the definition of employer to that entity shown on the Certificate of Insurance.[20] This argument is without merit, as the fact that the certificate of insurance was issued in the name of one of the joint venturers does not eliminate the protection afforded to the other given the broad statutory definition of "employer." *See Claxton, supra; Lawler v. Dallas Statler-Hilton,* 793

---

[19] The 1986 Amendment to 14 V.I.C. § 284 added a subsection which 1) limited the situations when a contractor can be deemed an "employer" of a subcontractor's employees; 2) eliminated the "statutory employer" and "borrowed servant" doctrines; and 3) authorized suits by an injured worker against "any person responsible for his injuries other than the employer named in the certificate of insurance."

[20] Plaintiff refers to deposition testimony of Gerald Libal of Sandstone for the proposition that each company in the joint venture maintained separate Workmen's Compensation Insurance coverage for their own employees and subcontractor's employees. However, the testimony referenced by plaintiff merely indicates the Workmen's Compensation was handled by Mr. McElhenney of the Sandstone Group and Mr. Christensen from Lochridge. Mr. Libal further stated that he did not know the extent of the contract [between McElhenney and Christensen], but he was sure that since Solcar was a joint venture, they recorded their worker's compensation with the University. *See* Deposition of Jerry Libal, 2/9/93, page 76. Moreover, each member of the joint venture had separate and distinct obligations, and Solcar was responsible for providing the Workmen's Compensation Insurance.

S.W.2d 27, 35 (Tex.App. 1990) (fact that insurance policy did not name all members of joint venture did not create a material factual issue as to plaintiff's employment); *Cook*, 386 P.2d 616 (court held that one venturer's act in paying premiums for workmen's compensation to protect itself against loss should also redound to the benefit of the others); *Haertel v. Sonshine Carpet Co.*, 757 P.2d 364, 367 (Nev. 1988) (where a joint venturer has paid premiums for workmen's compensation to protect itself against loss, the benefit of the protection should also accrue to the other joint venturers). Furthermore, permitting Boudreaux to sue the joint venturers who did not actually pay the worker's compensation premiums would allow him in effect "to have his cake and eat it too," by getting workmen's compensation benefits and also the right to sue the other members of the employing unit. Thus, as joint venturers with Solcar, Lochridge and Sandstone were employers of all the employees working on the Reichold project, and the statutory protection from suit which Solcar enjoyed as a result of its workmen's compensation insurance inures to their benefit as well.

## CONCLUSION

The Court finds, based on this record, that defendants, as the moving party has discharged their burden by pointing out to the Court that there is no genuine issue as to any material facts concerning whether a valid joint venture existed between Solcar, Lochridge, and Sandstone. Additionally, plaintiff has not met his burden of showing that a material factual issue exists with respect to his contention that he was only employed by Solcar. This argument fails to create a material fact issue because as a matter of law, the joint venture, as well as its individual members were his employers. Thus, inasmuch as Solcar is, by virtue of the workers' compensation exclusive remedy provision, immune from civil liability, Lochridge and Sandstone as joint venturers are likewise immune from suit by Boudreaux. Accordingly, summary judgment shall enter.