**ROGER HARLAND, Plaintiff**

**v.**

**ROBERT W. GORE, SARAH I. GORE,
and JEAN SPARLING, Defendants**

Civil No. 895/1990

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

April 23, 1999

Nancy D'Anna, Attorney at Law, Cruz Bay, St. John, Virgin Islands *for Plaintiff*

Joseph B.W. Arellano, Esq. Campbell, Arellano & Rich, St. Thomas, Virgin Islands *for Defendants* Robert & Sarah Gore

DIASE, *Judge*

### MEMORANDUM OPINION

On a Motion for Summary Judgment, Defendants Robert and Sarah Gore ("Gores") seek dismissal of the Complaint and a declaration by the Court that there has been no trespass on the Plaintiff Roger Harland's ("Harland") property. They rely solely on findings of fact and conclusions of law entered in their favor after

12

a preliminary injunction hearing. This hearing had not been consolidated with a trial on the merits. For the reasons stated below, this Court holds that the findings and conclusions were tentative and inconclusive and Harland has since raised genuine issues of material facts through post-hearing affidavits. Additionally, the Court holds that one of the conclusions of law was erroneous as a claimant in a trespass action does not have to possess clear title to the property.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Gores are the owners of Parcel No. 15A-2-1 Estate Rendezvous and Ditliffe, St. John, U. S. Virgin Islands. On June 23, 1987, they granted D. Kevin Smith ("Smith"), the owner of the neighboring Parcel No. 15DA Estate Rendezvous and Ditliffe, a fifteen foot easement over their property to the public road.[1] A written Grant of Easement generally describing the easement was recorded at the Recorder of Deeds Office for St. Thomas and St. John on July 14, 1987. Importantly, however, a survey map dated March 12, 1987 ("survey no. 1") referred to in the Grant of Easement and prepared by licensed surveyor Louis Harrigan ("Harrigan"), who is now deceased, was not recorded either at the Department of Public Works or the Office of the Recorder of Deeds. Subsequently, Smith constructed a concrete driveway over the easement and used it as access to and from his parcel.

In a Warranty Deed dated June 7, 1989, Harland acquired title to Parcel 15G Estate Rendezvous and Ditliffe from Colleen Ferguson ("Ferguson"). Parcel 15G adjoins Parcel 15DA to some extent and the parties dispute to what extent. The deed referenced a recorded survey map ("survey no. 2"), also prepared by Harrigan, P.W.D. No. F9-3846-T80 dated May 18, 1980, with specific metes and bounds descriptions. Harland asserted that the driveway and ultimately the easement encroached on his parcel and filed a Complaint and Motion for a Preliminary Injunction on October 3,

---

[1] Smith was initially a Defendant in this action. Through a divorce action, he allegedly conveyed title to his parcel to his ex-wife Defendant Jean Sparling. The Court granted Harland leave to file an amended Complaint on September 17, 1998 to join Sparling as a Defendant. Harland did so but in the First Amended Complaint, failed to name Smith as a Defendant.

1990 in this Court.[2] He sought, in pertinent part, injunctive relief prohibiting Smith from trespassing and declaring that the Gores and Smith had no right, title or interest in that portion of his property upon which they had encroached.

The judge initially scheduled the hearing on Harland's motion for October 23, 1990.[3] That hearing did not take place for reasons not relevant to this opinion and the judge rescheduled the hearing for November 21. Smith then sought a continuance and the judge again rescheduled the hearing for December 14. This time, all the parties requested a continuance so that depositions could be taken of those witnesses who were expected to testify, and the judge granted the continuance and rescheduled the hearing to January 22, 1991. In the meantime, the Gores and Smith filed an Answer and Counterclaim in which they denied the allegations and sought a declaration by the Court that Smith had not trespassed on Harland's property and that the grant of easement did not infringe on his property in any way.

The preliminary injunction hearing ultimately went forward on January 22, 1991 and February 14, 1991. Noteworthy, the judge did not consolidate the hearing with a trial on the merits. Testifying on behalf of Harland were Harland, Ferguson, and licensed surveyor Charles Hamilton. Testifying on behalf of the Defendants were Smith, licensed surveyor Joseph Brennan, and Harold Monoson, Esq. On March 12, 1991, the judge entered written findings of fact and conclusions of law and denied Harland's Motion for Preliminary Injunction.

Significant factual findings and conclusions surrounding two critical issues — the boundary line between Parcels 15A-2-1 and 15G and Harland's sufficiency of title to assert the claims — will be discussed. First, in regard to the boundary line, the judge found that a fence originally constituted the boundary line between the two parcels, as the fence was the northern and western boundary of Parcel 15G. He found surveys no. 1 and 2 to be inconsistent as they portrayed different locations for this boundary line, and therefore, only one survey could possibly be correct. He admitted

---

[2] Harland never filed a Motion for a Temporary Restraining Order.

[3] The undersigned was not the judge to whom the case was assigned at that time.

14

testimony from Smith, over the objection of Harland, that Harrigan had told Smith in 1987 that survey no. 2 was incorrect as the fence constituting the northwestern boundary line of Parcel 15G was not as depicted and that the survey was drawn by his assistant. He found that surveyor Brennan corroborated Harrigan's hearsay testimony, and ultimately concluded that the boundary line was not as depicted in survey no. 2 and that there was no trespass.

Second, in regard to Harland's title to his parcel, the judge found that he lacked clear title. He based this finding on the testimony of Attorney Monoson, who, in essence, served as an expert in the field of legal title to real property. According to Attorney Monoson, Ferguson never properly had title to the parcel. The judge concluded that clear title was a prerequisite for maintaining an action for trespass, and as Harland had not established that he had clear title, his claim failed.

On May 17, 1991, just two months after the judge entered the findings and conclusions, Smith filed a Motion for Summary Judgment relying on the findings and conclusions as the basis for dismissing the Complaint and awarding him a declaratory judgment establishing that the driveway and easement did not encroach or trespass on Parcel 15G. In June, 1991, the Gores joined in Smith's Motion. Harland opposed the motion in filings submitted in July and September, 1991. The judge, however, left the bench in late 1993 without issuing a ruling.

## II. LEGAL DISCUSSION

### A. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides, in pertinent part, that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[4] The party seeking summary judgment bears the initial responsibility of informing the

---

[4]The Federal Rules of Civil Procedure are made applicable to the Territorial Court through Rule 7 of the Rules of the Territorial Court.

Court of the basis of its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U. S. 317, 323 (1986); *Boudreaux v. The Sandstone Group*, 36 V.I. 86 (Terr. Ct. 1997). The burden then shifts to the nonmoving party.

In *Celotex Corp.*, 477 U.S. at 324, the Supreme Court held that "where the nonmoving party will bear the burden of proof at trial on a dispositive issue . . . Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial'." (citing Fed. R. Civ. P. 56(e)). In summarizing the basis for its opinion, the Supreme Court went on to state as follows:

> Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

*Id.* at 327.

■ If the nonmoving party fails to controvert facts supporting a motion for summary judgment, such facts are deemed admitted. *Zurita v. V. I. Daily News*, 20 V.I. 488, 493 (D. Ct. 1984). Where the nonmoving party completely fails to prove an essential element of his case, there can be no genuine issue of material fact. *Boudreaux*, 36 V.I. at 89 (citing *Celotex Corp.*, 477 U.S. at 322).

## B. Effect Of Preliminary Injunction's Findings Of Fact And Conclusions Of Law

As mentioned previously, the Gores and Smith support their motion with only the findings and conclusions issued after the preliminary injunction hearing. In order to determine the weight to give these findings and conclusions, the nature and purpose of preliminary injunction relief must first be analyzed.

According to Rule 65(a) of the Federal Rules of Civil Procedure, a court is empowered to issue a preliminary injunction once notice

16

has been given to the adverse party. A party seeking the issuance of such an injunction must establish the following four requisite factors: that immediate and irreparable injury, loss or damage will occur unless the injunctive relief is granted; that there is a likelihood that it will prevail on the merits; that upon balancing the hardship on the respective parties, there will not be substantial harm to the defendant should the relief be granted; and that it is in the public's interest to order such relief. *V. I. Taxi Association, Inc. v. V. I. Port Authority*, 36 V.I. 43, 49 (Terr. Ct. 1997), aff'd per curiam, 979 F. Supp. 344 (D.C.V.I. 1997).

Ordinarily, a hearing on a motion for a preliminary injunction is held shortly after a Complaint has been filed, and the parties are required to prepare and present their evidence with much urgency. A court can consolidate the hearing with a trial on the merits after giving notice, pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure. Unlike the purpose of the summary judgment procedure, which is to dispose of a case without a trial, the purpose of a preliminary injunction is limited, especially, as in this case, when there has been no consolidation of the hearing on the motion with a trial on the merits. In *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981), the Supreme Court established the parameters of such an injunction:

> The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held. Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. A party thus is not required to prove his case in full at a preliminary-injunction hearing.

Moreover, the Supreme Court held that "the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits . . . ." *Id.* Indeed, the Third Circuit Court of Appeals has described such findings as "tentative and inconclusive" and "at best, are nothing more than a tentative judgment of the litigation." *Wyrough & Loser, Inc. v. Pelmor*

17

*Laboratories, Inc.*, 376 F.2d 543, 548 (3d Cir. 1967); *see also Railroad Yardmasters v. Pennsylvania Railroad Co.*, 224 F.2d 226, 229 (3d Cir. 1955).

That is not to say, though, that the evidence presented at the preliminary injunction hearing is of little import to a trial on the merits. Rule 65(a)(2) of the Federal Rules of Civil Procedure provides that evidence received at the hearing becomes a part of the trial record. In fact, at the trial, some duplication of the evidence is permissible. "[A] party may go over the same ground that was covered at the preliminary-injunction hearing if he wishes to permit a witness to tell a complete and coherent story, to refresh the same judge's impressions, or to allow a different judge to make an independent determination of the witness' credibility." 11A CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2950 at 247-248 (2d ed. 1995).

Despite the tentative and inconclusive status of the findings and conclusions, they were sufficient to shift the burden to Harland. Therefore, Harland was required to establish that there were genuine issues of material facts preventing summary judgment as a matter of law.

## C. Plaintiff's Post-Hearing Filings

Importantly, Harland has supported his opposition to the summary judgment motion with affidavits which go to the heart of the evidence presented at the preliminary injunction hearing. One such affidavit is from Phillip Registe, surveyor Harrigan's assistant, who was not a witness at the hearing. According to Registe, he actually did the ground survey for survey no. 2; he observed the fence while doing the survey; and the metes and bounds reflected are accurate. His averments directly contradict Harrigan's alleged representations to Smith that survey no. 2 was not accurate. This affidavit, therefore, creates a genuine issue of material fact as to the boundaries of Parcel 15G and which survey is accurate.

A second affidavit is from surveyor Hamilton which supplements his testimony at the preliminary injunction hearing. Prior to the hearing, both Hamilton and the Defendants' surveyor, Brennan, performed surveys of the area and at the hearing, both testified. Harland argues, though, that Hamilton never testified

regarding the inaccuracy of Brennan's survey and this opinion is critical. In his affidavit, Hamilton opines that survey no. 1 was "erroneous and deceptive" and that Brennan's survey improperly depicts where the easement would run.

A review of a transcript of the February 14, 1991 hearing confirms that Hamilton did not testify regarding Brennan's survey. Hamilton's opinions as expressed in his affidavit are crucial, as they undermine the finding that survey no. 2 was inaccurate and therefore, raise genuine issues of material fact.

█ It is evident that, as to Harland, he did not present his full case at the hearing. The affidavits that he has since submitted prevent this Court from granting summary judgment and require that it set a date for a trial on the merits. Such a trial will be scheduled in the near future.

## D. Title to Sustain a Trespass Action

According to evidence submitted at the hearing, Ferguson executed a Warranty Deed dated June 7, 1989, which purported to convey title to Parcel No. 15G to Harland. That deed was recorded at the Recorder of Deeds Office for St. Thomas and St. John on June 15, 1989. As mentioned previously, the deed specifically referenced survey no. 2 as a description of the property being conveyed. The judge found that this parcel was one of the assets listed in *In the Matter of the Estate of Moses Williams, deceased*, Territorial Court Probate No. 5/1989. Moses Williams was Ferguson's father. An adjudication entered on April 18, 1989 placed title in the parcel to Ferguson.

Attorney Monoson, on behalf of the Defendants, testified, and the judge found, that there was no chain of title showing that the parcel was ever conveyed or descended to Moses Williams. Apparently, although the parcel had been owned by Moses Williams' father, it was not clear how Moses Williams acquired title. The judge concluded as a matter of law that Harland did not have clear title to Parcel No. 15G and "[c]lear title . . . is a prerequisite to making out a trespass action . . . ."

Harland argues that, as he is in possession of the property, he may properly maintain a trespass action against anyone who does not have a superior right to the parcel. Indeed, he asserts that no

one has claimed a contravening interest in the parcel, not even the Defendants.

According to the Restatement (Second) of Torts § 158 (1965), a person is liable for trespass "if he intentionally (a) enters land in possession of the other, . . . or (b) remains on the land, or (c) fails to remove from the land a thing which he is under a duty to remove."[5] A person is deemed to be in possession of land if he "is in occupancy of land with intent to control it, or . . . has the right as against all persons to immediate occupancy of land, if no other person is in possession . . . ." Restatement (Second) of Torts § 157. Possession of property by a plaintiff accompanied by a deed showing color of right have always been held sufficient in a claim against a trespasser. *Campbell v. Rankin*, 99 U.S. 261 (1878).

■ Accordingly, clear title is not a prerequisite to or an element of a claim for trespass. Critically, the person asserting such a claim must be in possession of the land. Even though his title to the parcel may be somewhat defective, Harland possesses a Warranty Deed giving him the right to immediate occupancy and there has been no evidence presented that any other person claims title to the property, or has possession of it.

### III. CONCLUSION

The undersigned was not the judge who presided over the preliminary injunction hearing. Hence, to rely on the provisional findings and conclusions, after those have been sufficiently opposed, is anathema to our system of justice. Moreover, a clear error of law was made on the issue of a claimant's requisite title to establish trespass. An Order will be entered denying the Motion for Summary Judgment.

DATED: April 23, 1999

---

[5] Pursuant to V.I. Code Ann. tit. 1 § 4 (1995), the rules of common law as set forth in the restatements are to be applied in the courts of the Virgin Islands if there are no contrary local laws.